IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM JOSEPH HEDRICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 16-240-E ) ) |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) ) |

O R D E R

AND NOW, this 29th day of March, 2018, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14), filed in the above-captioned matter on March 22, 2017,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on February 2, 2017,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.** **Background**

On May 23, 2013, Plaintiff William Joseph Hedrick protectively filed a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et

1

seq. Specifically, Plaintiff claimed that he became disabled on November 9, 2012, due to anxiety disorder, antisocial personality disorder, impulse control disorder and stroke. (R. 144, 160).

After being denied initially on November 18, 2013, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on June 17, 2015. (R. 33-75). In a decision dated July 13, 2015, the ALJ denied Plaintiff's request for benefits. (R. 15-32). The Appeals Council declined to review the ALJ's decision on August 3, 2016. (R. 2-7). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the

2

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If

3

the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since May 23, 2013. (R. 20). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had certain severe impairments, specifically, obesity, chronic obstructive pulmonary disease, vertigo, dysautonomia, generalized anxiety disorder,

major depressive disorder, antisocial personality disorder, bipolar disorder, and posttraumatic stress disorder. (R. 20). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 21).

The ALJ next found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he can never climb a ladder, rope or scaffold; can only occasionally climb ramps and stairs; can only occasionally balance, stoop, kneel, crouch or crawl; must avoid even moderate exposure to gasses, fumes and like respiratory irritants; must avoid even moderate exposure to temperature extremes, wetness and humidity; must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; is limited to understanding, remembering and carrying out simple instructions and performing simple, routine tasks, such as those akin to the requirements of work at the SVP 1 or SVP 2 levels; is limited to no work-related interaction with the public and only occasional and superficial interaction with coworkers; is limited to only occasional supervision; and is limited to a low stress work environment, which means no production rate pace work, but rather, goal-oriented work with only occasional and routine change in work setting (defining routine change as that which does not require alteration in work method). (R. 23).

At Step Four, the ALJ found that Plaintiff has no past relevant work, and he moved on to Step Five. (R. 27). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as laundry folder, garment sorter, and hand packer. (R. 28). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 28).

**IV. Legal Analysis**

Plaintiff raises several arguments as to why he believes that the ALJ erred in finding him to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, because the Court finds that the ALJ did not fully discuss all the evidence of record relevant to Plaintiff's alleged left upper extremity weakness, the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Among Plaintiff's complaints here is that he has left upper extremity weakness, which he has repeatedly attributed to strokes from 2005 and 2006. Scattered through the ALJ's decision are references to Plaintiff's complaints of left-side symptoms and bits of evidence concerning

6

left-side issues, although the ALJ determined that there was no objective support for Plaintiff's allegations of strokes. (R. 21). Nevertheless, the Court finds that the ALJ failed to engage in sufficient discussion regarding certain evidence related to Plaintiff's left upper extremity weakness, specifically, his physical therapy treatment records from Meadville Medical Center.

The ALJ noted in his decision that, after a physical examination revealed weakness in Plaintiff's left arm and leg, Plaintiff's primary care physician referred him to a neurologist, Rhunelle Murray, M.D., in early 2014. (R. 26). The ALJ explained that although Dr. Murray noted only mild strength loss on Plaintiff's left side during her exam, she treated him for dysautonomia, and later referred him to physical therapy to improve the functioning of his left hand. (R. 26). The ALJ's only additional comment regarding this course of treatment is that Plaintiff "testified that he attend[ed] physical therapy and that it was beneficial to him."[1] (R. 26).

The records from those therapy appointments, however, reveal that Dr. Murray referred Plaintiff to occupational therapy in March of 2015, and that diagnoses are listed as hemiplegia, loss of dexterity and decreased functional ability. (R. 1661). The records show that shoulder, elbow, forearm and wrist testing indicated normal strength on the right, but only fair strength on the left. (R. 1664). The occupational therapy evaluation findings also found a significantly lower grip strength in his left hand than in his right. (R. 1665). Additionally, the records reveal that 9-hole peg hand testing was within the normal range on Plaintiff's right side, but was severely below normal on his left side. (R. 1665). Plaintiff's plan of care apparently included exercises to increase his strength, range of motion and endurance in his upper extremities. (R. 1667-68).

---

[1] Plaintiff did testify that his physical therapy helped his condition, but it is not clear to the Court the extent to which his symptoms improved. (R. 50-53).

The ALJ is not required to discuss every single piece of evidence in the record. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). The Court finds in this case, however, that this particular treatment evidence, which is dated just prior to the administrative hearing, is relevant to Plaintiff's complaints of left upper extremity weakness and lack of coordination, and that the ALJ erred in failing to discuss it altogether. Plaintiff claims to have left-side symptoms, which he has continually claimed were brought on by strokes. The Court is cognizant of the fact that the ALJ found Plaintiff's claims of having had strokes to be not supported by objective evidence. (R. 21). Additionally, the Court is aware that the ALJ did not find Plaintiff's subjective claims to be entirely credible. (R. 24). Nevertheless, the therapy records at issue provide recent objective evidence of Plaintiff's left upper extremity weakness, which is relevant to the ALJ's determination of Plaintiff's RFC that contained no upper extremity limitations. The ALJ was not required to find that left upper extremity weakness caused Plaintiff to be disabled, but the Court finds that the ALJ should have explained how he assessed such evidence, regardless of whether or not any such weakness was caused by strokes. Because the substance of these therapy records was not addressed at all in the ALJ's decision, it is not clear whether the evidence was considered and rejected by the ALJ, or whether the ALJ failed to consider it at all.[2]

Accordingly, the Court finds that the ALJ's discussion of Plaintiff's physical therapy records, which is relevant to the ALJ's RFC determination, is insufficient in this case. The Court

---

[2] As an aside, the Court notes that the government argues in their brief that the inclusion of additional manipulative limitations would have had no impact on the ALJ's ultimate finding that Plaintiff could perform representative jobs. The government bases this argument on the claim that Plaintiff's counsel asked the VE about the impact of significant reaching, handling, pushing and pulling limitations, and that the VE testified that such additional limitations would not prevent the performance of the representative jobs he had identified. (R. 72). While the VE did testify that a limited left hand could still be used as a guide, permitting work still to be done, the VE also explained that if efficiency was reduced too much, a person with such limitations would be fired. Thus, the VE testimony cited by the government does not fully address the potential effects of such limitations on the ability to perform work.

also finds that the ALJ's unclear explanation calls into question the appropriateness of his RFC finding, and the RFC formulated by the ALJ is therefore not supported by substantial evidence. While the ALJ is certainly permitted to find that Plaintiff's left upper extremity complaints do not cause any limitations, the Court finds that the ALJ's justification for such conclusion is simply unclear and lacking in specificity here. Thus, remand is required to allow for further discussion as to the ALJ's evaluation of the evidence in this regard and his ultimate formulation of Plaintiff's RFC.

Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinion and medical evidence presented in the record. Further, the ALJ should verify that his conclusions concerning Plaintiff's RFC—as well as his findings regarding the credibility of Plaintiff's symptoms—are fully explained, in order to eliminate the need for any future remand.

## V.     Conclusion

In short, because the ALJ failed to provide an adequate discussion regarding all the evidence of Plaintiff's left upper extremity symptoms, the Court finds that substantial evidence does not support the ALJ's RFC determination, and his ultimate decision, in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch
United States District Judge

ecf:        Counsel of record